UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SARAH STRONG,<br><br>                      Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>                      Defendant. | Case No.: 0:21-cv-01630<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>   1. FCRA, 15 USC § 1681 *et seq.* |

Plaintiff Sarah Strong ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by Defendant. Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in the City of St. Louis Park, Hennepin County, Minnesota.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) ("CRA"). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, GA 30092.

8. During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Minnesota and conducted business in the State of Minnesota on a routine and systematic basis.

9. Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

**FACTUAL BACKGROUND**

12. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendant, one of the three major CRAs in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

17. Defendant's consumer reports generally contain the following information: (i) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or a "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18. Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant, and other information must be independently gathered by Defendant, or acquired from third party providers, vendors or

4

repositories, such as computerized reporting services like PACER or Lexis-Nexis. Defendant may also obtain information from other CRAs (who commonly share information with each other).

19. Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

20. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

21. Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

22. Defendant knows the information it reports (or fails to report) about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

23. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

24. The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines his or her FICO Scores.

25. FICO Scores are calculated using information contained in Defendant's consumer reports.

26. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

27. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

   b. The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

28. Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding, are discharged.

29. However, Defendant also knows that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

30. Further, Defendant knows that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

31. Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendant voluntarily obtained consumer bankruptcy case information.

32. However, Defendant regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

33. Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

34. Defendant regularly publishes consumer information that conflicts with the information provided by data furnishers, is included in Defendant's credit files, is contained in public records that Defendant regularly accesses, and/or is sourced through Defendant's independent and voluntary efforts.

35. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate consumer reporting following a Chapter 7 discharge, including failure to report the discharge.

36. Therefore, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which often produce inaccurate balances, account, and payment statuses.

### *Allegations Specific to Plaintiff's Credit Reporting*

37. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

38. In July 2020, Plaintiff filed for a "no asset" Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of Minnesota, petition no. 20-41937-KHS.

39. Plaintiff received an Order of Discharge in October 2020.

40. Thereafter, Plaintiff was not personally liable for her dischargeable debts and those debts had a $0 balance after the bankruptcy discharge.

41. Upon information and belief, Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

42. Defendant reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the date of the last status update.

43. Defendant failed to report Plaintiff's consumer bankruptcy information in the Public Records section or in any individual tradelines of Plaintiff's credit reports.

44. Notably, the other CRAs -- Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union") -- accurately reported Plaintiff's

bankruptcy information in the Public Records sections of their respective reports, and in the individual tradelines of their respective reports.

45. Upon information and belief, Defendant received notice of Plaintiff's bankruptcy discharge through its independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's credit reports. Defendants may also have received such information from other CRAs who shared the information.

46. Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

47. Defendant should have reported all of Plaintiff's dischargeable pre-petition debts as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero balance, but did not.

48. Defendant should not have reported any late payment history in the months after Plaintiff filed for bankruptcy.

49. Defendant also should not have reported any "charge offs" after the bankruptcy discharge.

50. Rather than accurately report the discharged debts, Defendant reported Plaintiff's accounts with numerous inaccuracies.

51. As a preliminary matter, Equifax did not at all indicate that Plaintiff had filed for bankruptcy and received a discharge.

9

52. The name, social security number, and address in Plaintiff's Chapter 7 petition are set forth in the information listed on her Equifax consumer report.

53. Defendant failed to report Plaintiff's bankruptcy discharge, even though Defendant had personal information for Plaintiff in its database which matched the personal information in Plaintiff's Chapter 7 petition (e.g., full name, social security number, address(es)). Non-parties Experian and Trans Union, furthermore, accurately reported Plaintiff's bankruptcy filing and discharge based on the same information.

54. Additionally, furnishers reported the Plaintiff's discharged/zero account balances, bankruptcy and/or discharge information to Equifax.

55. Defendant knew or should have known that Plaintiff's bankruptcy was discharged.

56. Defendant reported debts that were in fact discharged in bankruptcy and was therefore required to report these as discharged. However, Defendant's failure to report Plaintiff's bankruptcy (filed in July 2020 and discharged in October 2020) in Plaintiff's consumer disclosure caused the numerous inaccuracies mentioned in Plaintiff's consumer report.

57. Upon information and belief, furnishers of information accurately reported Plaintiff's accounts were included in Plaintiff's bankruptcy discharge after the bankruptcy filing/discharge, but Defendant rejected or revoked the data furnished to it and inaccurately overrode the reporting of the accounts.

58. On Plaintiff's consumer disclosure, Defendant inaccurately reported Plaintiff's Fortiva account, beginning with 5427***** and opened in April 2019 ("the

Fortiva Account"), with a charged off status as of August 2020 through December 2020. Equifax knew this account predated Plaintiff's bankruptcy and was discharged thereby.

59. The status of "Charge-Off" in the credit reporting industry means that a debt may still be owed, especially where as here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy.

60. The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

61. According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges; the time frame is generally between 120 and 180 days after the consumer becomes delinquent; and a charge-off does not mean that you no longer owe the debt (i.e., the consumer is still legally obligated to pay the debt).

62. Equifax also inaccurately reported Plaintiff's Indigo-Celtic Bank account, beginning with 5100**** and opened in December 2018 ("the Indigo Account"), with a history of late payments following Plaintiff's bankruptcy filing in July 2020 and a charged off status as of November 2020 (after the discharge). Equifax knew this account predated Plaintiff's bankruptcy and was discharged thereby.

63. Upon information and belief, Lexis-Nexis furnished information to all three CRAs, including Defendant, that indicated Plaintiff had filed for bankruptcy and received a discharge, but Defendant rejected or otherwise overrode the data it received.

64. Upon information and belief, some or all of the data furnishers of the foregoing tradelines provided information to all three CRAs, including Defendant, that

11

indicated their corresponding accounts had been discharged in bankruptcy, but Defendant rejected or otherwise overrode the data it received.

65. In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge were readily available to Defendant through multiple sources such as PACER, but upon information and belief, Defendant failed to review those sources or knowingly overrode them.

66. In any event, Defendant knew or had reason to know that it reported information contradicted by notices received from third parties.

67. Defendant inaccurately reported account statuses and payment histories.

68. Notably, Experian and Trans Union, the two other national CRAs, reported Plaintiff's Fortiva and Indigo accounts accurately on consumer disclosures produced after Plaintiff's discharge.

69. Defendant's reporting of the Fortiva and Indigo Accounts is patently inaccurate.

70. If not patently inaccurate, Defendant's reporting of the Fortiva and Indigo Accounts is materially misleading.

### *Plaintiff's Damages*

71. Upon information and belief, all or part of Plaintiff's credit information, as it appeared in her February 3, 2021 Equifax consumer disclosure, was published to third parties.

72. After her discharge, Plaintiff applied for a Capital One credit card and, upon information and belief, was denied due to the erroneous reporting by Equifax.

73. Plaintiff also applied for a Credit One credit card and, upon information and belief, was approved at less favorable terms than Plaintiff would have obtained had Equifax reported accurately.

74. Upon information and belief, Capital One and Credit One reviewed Plaintiff's Equifax consumer report while Plaintiff was applying.

75. Upon information and belief, Plaintiff's consumer credit file and consumer reports were also reviewed by numerous other entities after the discharge of her bankruptcy; those entities viewed the erroneous information published by Equifax.

76. As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

77. The anxiety from Equifax reporting charged off accounts that were discharged in Plaintiff's bankruptcy increased the stress on Plaintiff's marriage after an already difficult situation. Plaintiff is unable to reestablish credit and move forward with a fresh start. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I
## Violations of the FCRA, 15 U.S.C. § 1681e(b)

78. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

79. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

80. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

81. Defendant received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendant through sources of consumer information such as Lexis Nexis, Defendant's own files, and information provided by data furnishers, yet Defendant rejected that information.

82. Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

83. Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

84. Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

85. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records and its own files, including other furnishers that report to Defendant that the consumer's bankruptcy has been discharged.

86. In this case, the inaccurately reported debts pertain to accounts Defendant knew predated Plaintiff's Chapter 7 Bankruptcy, were included and discharged by Plaintiff's bankruptcy discharge, and therefore should not have reported with late payments and/or a charged off status.

87. Defendant's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because the Defendant regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

88. Defendant knew or should have known it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

89. Defendant knew or should have known it is obligated, by the FCRA, to update consumer reports and individual tradelines after receiving notice of a Chapter 7 Bankruptcy Discharge.

90. Defendant knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

91. CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendant.

92. Therefore, Defendant had ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

93. If Defendant contends it did not have sufficient notice, Defendant must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 7 Bankruptcy.

94. Defendant regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

95. In this case, Defendant knew or should have known about Plaintiff's bankruptcy filing and discharge, and failed to include that information in Plaintiff's consumer disclosure and in consumer reports published to third parties.

96. When Defendant received notice of Plaintiff's bankruptcy information, it had an obligation to ensure it reported Plaintiff's discharge and its effects with maximal accuracy.

97. Unfortunately, Defendant willfully and consciously breached its duties as a CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

98. Despite knowledge of its legal obligations, Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure/credit report.

99. Defendant knows that discharged debts should not be reported as late or charged off after the discharge date.

100. Yet, in this case, Defendant reported accounts that predated Plaintiff's bankruptcy with improper account statuses and erroneous late payment histories after Plaintiff's discharge.

101. Defendant knew or should have known the information it reported about the Fortiva and Indigo accounts was inaccurate.

102. Defendant violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information Defendant was reporting was inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

103. Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

104. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

105. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

106. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denials, and other financial harm caused by Defendant inaccurately reporting Plaintiff's credit information.

107. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

108. Defendant is a direct and proximate cause of Plaintiff's damages.

109. Defendant is a substantial factor in Plaintiff's damages.

110. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, and costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

(a) Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(e) An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

///

///

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted this 15th day of July 2021.

> By: */s/ Jenna Dakroub*
> Jenna Dakroub
> Bar Number: 0401650
> **PRICE LAW GROUP, APC**
> 8245 N. 85th Way
> Scottsdale, AZ 85258
> T: (818) 600-5513
> F: (818) 600-5431
> E: jenna@pricelawgroup.com
> *Attorneys for Plaintiff*,
> *Sarah Strong*